**MORGAN, LEWIS & BOCKIUS LLP**
(Pennsylvania Limited Liability Partnership)
502 Carnegie Center
Princeton, NJ 08540-6241
609.919.6600
Richard G. Rosenblatt
Nitin Sharma
Attorneys for Defendants
AtlantiCare Regional Medical Center
Carolyn Baier, and Rose Uhland.

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| SHELLY MARTIN, KARLA MAYFIELD AND DONNA M. DAVIS, <br><br> Plaintiff, <br><br> v. <br><br> ATLANTICARE, ATLANTICARE BEHAVIORAL HEALTH, ATLANTICARE  REGIONAL MEDICAL CENTER, ATLANTICARE CORPORATE, ATLANTICARE HEALTH ENGAGEMENT, ATLANTICARE HEALTH SERVICES, ATLANTICARE SURGERY CENTER, ATLANTICARE INFOSHARE/ ATLANTICARE INFORMATION TECHNOLOGY, CAROLINE BRIER, Individually, ROSE UHLAND, Individually, and John Does 1-5 and 6-10., <br><br> Defendants. | Civil Action No. 1:10-cv-06793-JHR-AMD <br><br> *Document filed Electronically* |

---

### DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 11

---

**On the Brief:**
**Richard G. Rosenblatt**

# TABLE OF CONTENTS

**Page**

I. PRELIMINARY STATEMENT AND RELEVANT FACTS ................................................. 1

- Plaintiff Davis' Claims .................................................. 3
- Plaintiff Mayfield's Claims.................................................. 3
- Plaintiff Martin's Claims .................................................. 4

II. ARGUMENT .................................................. 7

A.   Rule 11 Requires Plaintiffs' Counsel To Certify That There Is A Good Faith   Basis For Claims.................................................. 7

B.   Plaintiffs' Claims are Fivolous .................................................. 10

1.   Plaintiff Davis' Claims Lack Any Factual Or Legal Foundation ........................ 10

2.   Plaintiff Mayfield's Claims Lack Any Factual Or Legal Foundation ................. 12

3.   Plaintiff Martin's Claims Lack Any Factual Or Legal Foundation .................... 14

a   Plaintiff Martin Has No Support For Her Discrimination Or Harassment Claims .................................................. 14

b   Plaintiff Martin Has No Support For Her Wage And Hour Claims .................................................. 16

III. CONCLUSION.................................................. 18

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

Cases

Alexander v. Seton Hall Univ.,
  204 N.J. 219 (2010) ...................................................................................................11

Ario v. Underwriting Members of Syndicate 53 at Lloyds for 1998 Year of Account,
  618 F.3d 277 (3d Cir. 2010).........................................................................................8

Cavuoti v. N.J. Transit Corp.,
  161 N.J. 107 (1999) ....................................................................................................14

Dieffenbach v. Cigna Corp.,
  No. 07-3685, 2007 WL 4275502 (E.D. Pa. Dec. 4, 2007).........................................8

Ford Motor Co. v. Summit Motor Prods., Inc.,
  930 F.2d 277 (3d Cir. 1991).........................................................................................8

Gaiardo v. Ethyl Corp.,
  835 F.2d 479 (3d Cir. 1987).........................................................................................7

Guenzel v. Mt. Olive Bd. of Educ.,
  No. 10-4452, 2011 WL 5599717 (D.N.J. Nov. 16, 2011) .......................................17

Heitzman v. Monmouth Co.,
  321 N.J. Super. 133 (N.J. App. Div. 1999)...............................................................16

Intermor v. Long Island Water Corp.,
  No. 08-4337, 2010 WL 1260154 (E.D.N.Y. Mar. 30, 2010).....................................9

Kellar v. Summit Seating Inc.,
  664 F.3d 169 (7th Cir. 2011) .....................................................................................17

Levey v. Brownstone Inv. Group, LLC,
  No. 11-0395, 2012 WL 603799 (D.N.J. Feb. 22. 2012) .............................................9

Lieb v. Topstone Indus., Inc.,
  788 F.2d 151 (3d Cir. 1986).........................................................................................7

Martinez v. Nat'l Broadcasting Corp.,
  877 F. Supp. 219 (D.N.J. 1994) .................................................................................16

Montells v. Haynes,
  133 N.J. 282 (1993) ....................................................................................................15

Morales-Evans v. Administrative Office of the Courts,
   102 F. Supp. 2d 577 (D.N.J. 2000) ..................................................13

Morris v. Orman,
   No. 87-5149, 1992 WL 398363 (E.D. Pa. Dec. 31, 1992) ......................9

Napier v. Thirty or More Unidentified Fed. Agents,
   855 F.2d 1080 (3d Cir. 1988) ........................................................9

Newsome v. Admin. Office of Courts,
   103 F. Supp. 2d 807 (D.N.J. 2000) .............................................14, 16

Sarmiento v. Montclair State Univ.,
   513 F. Supp. 2d 72 (D.N.J. 2007) ...............................................11

Stacey v. City of Hermitage,
   No. 02-1911, 2009 WL 689285 (W.D. Pa. Mar. 11, 2009) ....................8

Turner v. Sungard Bus. Sys., Inc.,
   91 F.3d 1418 (11th Cir. 1996) ......................................................9

Watson v. City of Salem,
   934 F. Supp. 643 (D.N.J. 1995) (Simandle, J.)..............................8, 9

**OTHER AUTHORITIES**

Fed. R. Civ. P. 11 .................................................................... passim

Fed. R. Civ. P. 11(b) ...............................................................7, 8, 10

Fed. R. Civ. P. 11(b)(2) & (3).........................................................7

Fed. R. Civ. P. 11(c)(1)..................................................................8

Pursuant to Federal Rule of Civil Procedure 11(c), and after having made a good faith effort to avoid the necessity of doing so, Defendants AtlantiCare Regional Medical Center ("AtlantiCare"), Carolyn Baier and Rose Uhland (collectively, "Defendants") submit this Memorandum of Law in support of their Motion for Sanctions Pursuant to Fed. R. Civ. P. 11 against Plaintiffs Shelley Martin, Karla J. Mayfield, Donna M. Davis ("Plaintiff") and their counsel at Franzblau Dratch, P.C. ("Franzblau Dratch"). By filing and later failing to voluntarily dismiss this case when it was or should have been clear that Plaintiff's claims wholly lacked evidentiary support, Plaintiffs and their counsel have caused – and will continue to cause – Defendants to expend valuable time and resources to defend against wholly meritless allegations, including preparing and filing a Motion for Summary Judgment. Had Plaintiffs and their counsel done even a minimal investigation before – or even after – filing the Complaint or the Amended Complaint, they would have readily recognized the frivolousness of Plaintiff's claims. Rather, they have needlessly forced Defendants to take further steps to secure judgment on Plaintiff's frivolous claims. Accordingly, Defendants respectfully request that the Court impose sanctions against both Plaintiffs and Franzblau Dratch.

## I.   PRELIMINARY STATEMENT AND RELEVANT FACTS

Plaintiffs are all current employees of Defendant AtlantiCare. On October 28, 2010, Plaintiffs filed a "kitchen sink" Complaint against Defendants, various AtlantiCare corporate entities, and John Does 1-10 in the Superior Court of the State of New Jersey, Atlantic County, Law Division, asserting broad claims of discrimination, harassment and retaliation in violation of the New Jersey Law Against Discrimination ("LAD"). Plaintiffs filed an Amended Complaint on November 23, 2010, to allege violations of the New Jersey Wage and Hour Law and Fair Labor Standards Act ("FLSA") for failure to pay Plaintiff Martin and purportedly similarly

situated employees for "off the clock" work.  Defendants later removed the action to federal court on December 28, 2010.  Dkt. Entry No. 1.  Following removal to federal court, the Parties engaged in discovery, including taking Plaintiffs' depositions on April 26, 2012 (Plaintiff Martin), May 9, 2012 (Plaintiff Davis) and May 16, 2012 (Plaintiff Mayfield).  During the discovery period, Defendants also produced nearly 1,400 pages of documents in response to Plaintiff's discovery requests, as well as witnesses for deposition.

Plaintiffs advance a broad array of claims under the LAD and federal and state wage and hour laws, including discrimination in pay, advancement opportunities and scheduling, use of racial epithets by the individual Defendants, discrimination in provision of overtime opportunities, retaliation for internal complaints regarding the aforementioned allegations of discrimination, and failure to pay certain employees for work allegedly performed "off the clock."  None of Plaintiffs' claims have a grain of evidentiary support.  While the frivolousness of Plaintiffs' claims should have been patently obvious prior to filing either the original Complaint or the Amended Complaint, Plaintiffs' deposition testimony removed even arguable doubt.  In fact, Plaintiffs' respective deposition testimony included several clear admissions that made plain that Plaintiffs' claims are unsupportable:

**Plaintiff Davis' Claims**

- Plaintiff Davis now admits that her manager Lou Sbarra, whom she had identified in the Amended Complaint as the person who discriminated against her with respect to availability of overtime opportunities, never "discriminated against [her] on the basis of [her] race" and "never treated [her] any differently because [she is] an African-American." Declaration of Richard G. Rosenblatt ("Rosenblatt Decl.") ¶ 2, Exh. A, at 17:13-19; 20:2-11.

- Plaintiff Davis was unable to identify any instances, evidence or facts that her immediate supervisor, Frank Copeland, had treated her differently based on her race. Id. at 46:6-15; 49:7-9.

- Plaintiff Davis admits that she never asked Sbarra or Copeland for permission to work overtime because the nature of her position did not require her to work overtime. Id. at 69:7-13.

- Plaintiff Davis testified that, during the pertinent period for purposes of the statute of limitations, she was not paid any less than her Caucasian peers. Id. at 77:2-20.

- Plaintiff Davis admits that she has no evidence that the Applications Analyst position she supposedly wanted was filled on the basis of race. Id. at 34:18-42:7. Plaintiff Davis further admits that she never even applied for the Applications Analyst position. Id. at 40:2-16.

**Plaintiff Mayfield's Claims**

- Plaintiff Mayfield admits that many of her claims with respect to harassment and discrimination in pay and promotion opportunities occurred outside the two statute of limitations period for LAD claims. Rosenblatt Decl. ¶3, Exh. B, at 117:5-21; 120:22-122:18; 45:7-10; 209:1-20.

- Plaintiff Mayfield admits that, with respect to her claim that certain positions in which she was interested were never posted, she did not regularly check the AtlantiCare website for job postings, and concedes that it is quite possible that she did not see the posted positions. Id. at 53:9-136; 54:1-56:4; 88:2-10.

3

- Plaintiff Mayfield could not testify to any facts whatsoever to suggest that she was denied a Patient Access Supervisor position based on her race, relying instead on her own unfounded allegations that AtlantiCare's policy for filling vacant positions was not followed. Id. at 64:11-14; 71:1-2; 81:22; 99:10-23.

- Plaintiff Mayfield admits that the alleged discriminatory and retaliatory scheduling complained of (which consisted of reductions in her hours) was based upon a department-wide decision to reduce employee hours in order to ensure each employee was scheduled in accordance with his or her Full Time Equivalent (FTE) status. Id. at 170:2-172:23.

- Plaintiff Mayfield admits that she declined additional working hours offered to her to make up for the hours that she had lost as a result of scheduling adjustments. Id. at 153:24-154:5.

- Plaintiff Mayfield admits that she heard only a single off-hand comment from Defendant Baier in support of her racial harassment claim. Id. at 132:1-133:20.

- Plaintiff Mayfield admits that she was aware of AtlantiCare's anti-harassment policies and the procedures contained therein for reporting harassment, and that she never utilized those procedures to report the alleged harassment. Id. at 133:12-20; 160:12-14; 196:2-7.

**Plaintiff Martin's Claims**

- Plaintiff Martin admits that the only facts in support of her claim that she was denied promotions on the basis of her race are that, "I don't see any supervisors that were African American," Rosenblatt Decl. ¶ 4, Exh. C, at 105:5-6, and that Plaintiff Mayfield was denied a position to which Plaintiff Martin had also applied and did not receive, id. at 105:45-19.

- Plaintiff Martin admits that, with respect to her applications for supervisor positions, she had no relevant supervisory experience. Id. at 107:19-21.

- Plaintiff Martin admits that, with respect to her application for a Team Leader position in early 2012, she "actually did not think one way or the other that it had anything to do with [her] race." Id. at 108:6-16.

- Plaintiff Martin admits that she does "not have any facts to suggest that [she has] not been awarded the [Patient Access] Mainland supervisor position because of [her] race." Id. at 111:5-8.

- Plaintiff Martin admits that she does not "have any facts to suggest that [she] was not awarded [a medical coding] position because of [her] race." Id. at 114:23-2.

- Plaintiff Martin admits that she does not have any facts to suggest that she was not awarded a Scheduler position due to her race, "just my own opinion." Id. at 116:8-13.

- Plaintiff Martin admits that she does not claim that she was paid less than other employees on the basis of her race, noting "that was not part of my claim." Id. at 217:16-20.

- Plaintiff Martin admits that she did not personally see or hear any of the alleged instances of racial harassment by the individual Defendants. Id. at 135:1-10; 139:14-140:24; 219:17-221:9.

- Plaintiff Martin admits that AtlantiCare had no policy of permitting or requiring off the clock work, that she never told any AtlantiCare supervisors or managers that she was allegedly working off the clock, that no supervisors were even aware she was allegedly working off the clock, and that no supervisor or manager ever directed her to work off the clock. Id. at 168:8-11; 170:8-19; 172:9-11; 189:14-17; 190:3-5.

And while even minimal investigation could have revealed the foregoing, Defendants' counsel have done everything within their capacity to explain to Plaintiffs and their counsel that there is no basis for this lawsuit. On May 16, 2012, following the deposition of Plaintiff Mayfield, Defendants' counsel advised Franzblau Dratch that while Defendants did not wish to pursue Rule 11 sanctions, they may have no choice given the utter lack of merit in Plaintiffs' claims. Declaration of Prashanth Jayachandran, Esq. ("Jayachandran Decl.") ¶ 2. Plaintiffs'

counsel agreed to take the issue under consideration, but Plaintiffs did not proceed with dismissal of the action, instead opting to put Defendants to the effort and expense of defending the depositions of the individual Defendants Baier and Uhland on May 24, 2012. Id. ¶ 3.

Counsel for Defendants spoke again with Franzblau Dratch on June 1, 2012 regarding the lack of merit to his clients' case. Id. ¶ 4. Plaintiffs' counsel agreed to meet with his clients to urge them to drop the case. Id. Plaintiffs, however, still did not drop their claims.

On June 6, 2012, Defendants' counsel sent a letter to Franzblau Dratch, which explained, in depth, the glaring deficiencies in Plaintiff's claims and requested that they withdraw this action or provide a response by June 12, 2012, before the Defendants incurred any additional fees and costs. Id. ¶ 5. On June 15, 2012, Defendants' counsel sent another letter to Franzblau Dratch inquiring about whether they intended to respond to June 6 letter requesting voluntary dismissal of the case with prejudice. Id. ¶ 6. On June 21, 2012, Plaintiffs wrote to the court, noting that Franzblau Dratch was seeking to withdraw as their counsel, and requesting to withdraw their complaint without prejudice, so that they might have "time to acquire the other evidence and statistical information needed to bring [their] case at a later time." Dkt. No. 59. This Court held a status conference on July 17, 2012, at which time the individual Plaintiffs represented to the Court that, despite the total lack of factual bases for their claims, they wished to continue their pursuit of them.

## II.   ARGUMENT

### A.   Rule 11 Requires Plaintiffs' Counsel To Certify That There Is A Good Faith Basis For Claims.

Under Rule 11(b) of the Federal Rules of Civil Procedure, by presenting a signed pleading, motion or other paper to the court, an attorney certifies that to the best of his or her knowledge, information and belief, formed **after a reasonable inquiry**:

the claims, defenses, and other legal contentions **are warranted by existing law** or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

[and]

the **factual contentions have evidentiary support** or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.

See Fed. R. Civ. P. 11(b)(2) & (3) (emphasis added).  Put more simply, the attorney verifies that "a reasonable investigation of the facts and a normally competent level of legal research support the presentation." Lieb v. Topstone Indus., Inc., 788 F.2d 151, 157 (3d Cir. 1986); see also Gaiardo v. Ethyl Corp., 835 F.2d 479, 482 (3d Cir. 1987) ("[Rule 11] imposes an obligation on counsel and client analogous to the railroad crossing sign, 'Stop, Look and Listen.'  It may be rephrased, 'Stop, Think, Investigate and Research' before filing papers either to institute a suit or to conduct the litigation.").

Importantly, an attorney's obligations under Rule 11 "are not measured solely as of the time [documents] are filed with or submitted to the court." Fed. R. Civ. P. 11(b) (1993 adv. comm. notes).  Rather, under the language of the Rule itself, an attorney "presents" a pleading, motion or other paper to the court "by signing, filing, submitting, or later advocating it." Fed. R. Civ. P. 11(b).  Therefore, while the Rule permits attorneys to assert factual allegations upon information and belief, "if evidentiary support is not obtained after a reasonable opportunity for further investigation or discovery, the party has a duty under the rule not to persist with that contention." See id. (1993 adv. comm. notes); see also Dieffenbach v. Cigna Corp., No. 07-3685, 2007 WL 4275502, at *4 (E.D. Pa. Dec. 4, 2007) ("Notwithstanding the emphasis on the time of the initial submission, however, parties will not be entitled to continued immunity if they acquire or should acquire knowledge under the Rule's standard before a later filing.")  In this

way, the Rule "emphasizes the duty of candor by subjecting litigants to potential sanctions for

insisting upon a position after it is no longer tenable." Fed. R. Civ. P. 11(b) (1993 adv. comm.

notes); see also Stacey v. City of Hermitage, No. 02-1911, 2009 WL 689285, at *4 (W.D. Pa.

Mar. 11, 2009) ("In sum, there is a duty to obtain evidentiary support for the claims asserted and

a continuing duty to abandon untenable legal positions.").

To enforce Rule 11, courts have discretion to "impose an appropriate sanction on any

attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ.

P. 11(c)(1). In determining whether there has been a violation, courts consider whether the

conduct at issue was "objectively reasonable under the circumstances." Ario v. Underwriting

Members of Syndicate 53 at Lloyds for 1998 Year of Account, 618 F.3d 277, 297 (3d Cir. 2010).

Specifically, courts consider "whether a competent attorney who conducted a reasonable

investigation into the facts and law pertinent to the case would have determined that the

allegations presented against defendants were well grounded in law and fact." Watson v. City of

Salem, 934 F. Supp. 643, 663 (D.N.J. 1995) (Simandle, J.). Further, although sanctions are

appropriate only in "exceptional" circumstances, such circumstances include the filing of a claim

or motion that is "patently unmeritorious or frivolous." Id. (citing Ford Motor Co. v. Summit

Motor Prods., Inc., 930 F.2d 277, 289-90 (3d Cir. 1991)); see also Levey v. Brownstone Inv.

Group, LLC, No. 11-0395, 2012 WL 603799, at *2 (D.N.J. Feb. 22. 2012) (Waldor, M.J.)

(explaining that Rule 11 "was designed to deter pleadings that are 'frivolous, legally

unreasonable, or without factual foundation.'") (quoting Napier v. Thirty or More Unidentified

Fed. Agents, 855 F.2d 1080, 1090-91 (3d Cir. 1988)).

Courts have not hesitated to issue sanctions where plaintiffs' counsel have needlessly

protracted a frivolous case. See Turner v. Sungard Bus. Sys., Inc., 91 F.3d 1418, 1422 (11th Cir.

1996) (concluding district court had "ample basis" to sanction substitute counsel where, after taking a particular deposition, he "had to know that the case was without a factual basis but failed to dismiss it, thereby forcing [the defendant] and the court to expend time and money on a summary judgment motion"); Intermor v. Long Island Water Corp., No. 08-4337, 2010 WL 1260154, at *6 (E.D.N.Y. Mar. 30, 2010) (granting defendant's motion for summary judgment, and awarding attorneys' fees and costs for entirety of case as Rule 11 sanctions because plaintiff's age discrimination claims were completely unsupported, and plaintiff's counsel failed to dismiss case despite being warned about his lack of evidence); Watson, 934 F. Supp. at 661-66 (granting defendants' motion for summary judgment and ordering plaintiff's counsel to pay defendants' attorneys fees as Rule 11 sanctions where court found that most claims were foreclosed by operation of law and other claims lacked factual support, which should have been apparent to plaintiff's counsel even with "smallest modicum of investigation"); Morris v. Orman, No. 87-5149, 1992 WL 398363, at *3 (E.D. Pa. Dec. 31, 1992) (after granting defendants' motion for judgment on the pleadings and motion for summary judgment, ordering plaintiff and his counsel to pay defendants' attorneys fees as Rule 11 sanctions because long-standing precedent precluded any argument that plaintiff's complaint was warranted by existing law or by a good faith argument for reversal thereof).

**B.   Plaintiffs' Claims Are Frivolous.**

Pursuant to Fed. R. Civ. P. 11(b), Franzblau Dratch and Plaintiffs were required to engage in an objectively reasonable inquiry into the factual and legal viability of claims raised in the Complaint and Amended Complaint. This was an ongoing obligation. Yet, as made clear by their depositions, Plaintiffs' claims lack any factual support. Had Plaintiffs and their counsel

conducted the requisite reasonable investigation before or after filing the pleadings in this matter, they would have learned of these deficiencies; their failure to do so violated Rule 11.

### 1.   __Plaintiff Davis' Claims Lack Any Factual Or Legal Foundation.__

As an initial matter, Ms. Davis, a Payroll Department employee, conceded under oath that her claims have nothing to do with the allegations lodged by Ms. Martin and Ms. Mayfield against Defendants Uhland and Baier.  Rosenblatt Decl. ¶ 2, Exh. A, at 28:16-29:2.  Instead, Ms. Davis' claims of racial discrimination rest solely upon her contentions that (1) she did not receive opportunities to work the same amount of overtime hours as her Caucasian co-workers in Payroll, (2) she was paid less than her similarly situated Caucasian co-workers, and (3) she was denied opportunities for advancement through internal job transfers.  But Ms. Davis offers not an iota of fact to substantiate any claim of racial discrimination.

First, Ms. Davis testified that Lou Sbarra, the head of the Payroll Department in which she has worked for the past 13 years, did not discriminate against her in anyway, let alone on the basis of race.  Id. at 17:13-18:6; 20:2-11; 37:7-12.  To the contrary, Ms. Davis admits that she and Mr. Sbarra have always enjoyed a solid and professional working relationship.  Nor could Ms. Davis offer any instances, evidence or facts that her immediate supervisor, Frank Copeland, treated her differently based on her race.  Id. at 46:6-15; 49:7-9.

Second, with respect to her overtime claim, Ms. Davis testified that she is able to complete all of her job duties in an eight-hour workday, and thus, has *never* asked Mr. Sbarra or Mr. Copeland for permission to work overtime.  Id. at 69:7-13.  Therefore, the nature of Ms. Davis' work does not even require her to work overtime, rendering her claim of a discriminatory denial of overtime illogical and meritless.

With respect to her claim of unequal pay, Ms. Davis testified that by 2003, she was receiving the same pay as her allegedly similarly situated Caucasian colleagues.  Id. at 77:2-20.

Thus, any claim of race discrimination in pay prior to 2003 is time-barred under the LAD. Alexander v. Seton Hall Univ., 204 N.J. 219, 235 (2010) (holding that claims for discrimination in payment of wages arising before the two-year period immediately preceding the filing of plaintiff's complaint were barred as untimely).

While Ms. Davis contends that AtlantiCare denied her advancement opportunities due to her race, Ms. Davis admits that she has no evidence that the one position she sought (Applications Analyst) was filled on the basis of race. Rosenblatt Decl. ¶ 2, Exh. A, at 34:18 – 42:7. Ms. Davis also alleges that the Medical Center's failure to create a specific Kronos trainer position for her is evidence of racial discrimination, but she admits she never even asked AtlantiCare to create such a position. Id. at 42:12-43:13. In any event, an employer's refusal to create a new position for an employee is not evidence of discriminatory animus. Sarmiento v. Montclair State Univ., 513 F. Supp. 2d 72, 93 (D.N.J. 2007) ("it does not stand to reason that [an employer] should . . . be expected to create a position" in order to comply with anti-discrimination laws). In sum, Ms. Davis has adduced absolutely no evidence to support any racial discrimination.

### 2.   Plaintiff Mayfield's Claims Lack Any Factual Or Legal Foundation.

Ms. Mayfield also can cite no evidence to support her racial discrimination or harassment claims. First, almost all of Ms. Mayfield's claims are time-barred by the LAD's two-year statute of limitations, such as alleged harassment by her former supervisor, Darren Clinkscale, in 1997 or 1998 (Rosenblatt Decl. ¶ 3, Exh. B, at 117:5-21); alleged pay discrimination in 2005 (id. at 120:22-122:18); the filling of managerial positions by Rose Uhland, Heather Iannace and Cathyann Hoppe sometime between 2000 and 2003 (id. at 45:7-10); and training opportunities Ms. Mayfield was allegedly denied in 2000 or 2001 (id. at 209:1-20).

11

With respect to her timely claims, Ms. Mayfield testified that she perceived racial obstacles to her ability to transfer to more desirable positions within AtlantiCare. Ms. Mayfield claims, with no factual support, that a Team Lead position filled by Rebecca Dolequist (as well as other positions) was never posted. Id. at 47:1-49:3. Yet, Ms. Mayfield testified that rather than regularly checking the AtlantiCare intranet for job postings, she only occasionally stopped in the Human Resources office to look for postings, and conceded that it is quite possible that she did not see positions when AtlantiCare posted them. Given these circumstances, it is unconscionable that she would claim that jobs were not posted. Nor did Ms. Mayfield inquire whether any jobs she was interested in had been posted, even after they were filled. Id. at 53:9-13; 54:1-56:4; 88:2-10. In other words, Ms. Mayfield has adduced no evidence that AtlantiCare failed to post vacant positions in accordance with its policy and practice, let alone because of her race. Moreover, Ms. Mayfield's rank speculation about job postings is dead wrong. AtlantiCare does, in fact, post all internal positions.

Ms. Mayfield also claims she was denied a Healthplex Supervisor position for which she applied in 2011. Underscoring the baselessness of her claim, she could not state who else applied for the position, who was responsible for filling the position, or the required qualifications for the position. Id. at 91:23-92:6; 100:9-21. Ms. Mayfield could not testify to any facts whatsoever to suggest that she was not awarded this position due to her race, relying instead on her own conclusory and unfounded allegations, that the Medical Center's policy for filling vacant positions was not followed. Id. at 64:11-14; 71:1-2; 81:22; 99:10-23. Such allegations do not establish discrimination.

While Ms. Mayfield contends that her work schedule was altered and her hours were reduced as a result of race discrimination and retaliation, she also admits that her reduction in

hours was based upon a department-wide decision to schedule each employee in accordance with his/her FTE status. Id. at 170:2-172:23. Ms. Mayfield also claims she lost additional hours to another employee in late 2009 or early 2010 because she is African-American, but when her supervisor subsequently offered to provide her additional hours, Ms. Mayfield declined the offer. Id. at 151:2-154:5. Thus, whenever pressed to explain her racial discrimination or retaliation claims, Ms. Mayfield always recognized the legitimate, non-discriminatory reasons for any grievance she raised.

Ms. Mayfield claims "harassment" because Ms. Baier allegedly made a single, off-handed remark regarding her hairstyle or head covering. Id. at 132:1-133:20. Even if true, such an isolated occurrence cannot, as a matter of law, create a hostile work environment. See, e.g., Morales-Evans v. Administrative Office of the Courts, 102 F. Supp. 2d 577, 590 (D.N.J. 2000) ("scattered events over [] an extended period of time [do not] constitute pervasive harassment"). Moreover, Ms. Mayfield, who was well aware of AtlantiCare's anti-harassment policy, never reported the "religion" comment, or any other similar comments attributed to Ms. Baier, to AtlantiCare management or Human Resources. Rosenblatt Decl. ¶ 3, Exh. B, at 133:12-20; 160:12-14; 196:2-7. For this reason alone, Ms. Mayfield's harassment claim fails. Cavuoti v. N.J. Transit Corp., 161 N.J. 107 at 117 n.1 (1999) (noting that an employer may avoid liability for harassment by showing "(a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise."); Newsome v. Admin. Office of Courts, 103 F. Supp. 2d 807, 820 (D.N.J. 2000) (finding no employer liability for harassment where plaintiff was

aware of employer's publicized anti-harassment policy and complaint procedures, but failed to utilize those procedures to lodge a complaint).

### 3.   Plaintiff Martin's Claims Lack Any Factual Or Legal Foundation.

#### a.   *Plaintiff Martin Has No Support For Her Discrimination or Harassment Claims.*

Ms. Martin's claim of racial discrimination rests upon her purported belief that she was denied the positions of City Supervisor, Mainland Supervisor, a "Coding" position, and a Scheduler position because she is African-American.  Rosenblatt Decl. ¶ 4, Exh. C, at 103:20-107:21; 108:2-16; 111:5-8; 112:9-115:2; 115:7-116:13.  Ms. Martin, however, presents no facts or evidence at all to remotely suggest that race played any role in the decision to deny her any position for which she applied.  Id. at 103:20-107:21; 108:2-16; 111:5-8; 112:9-115:2; 115:7-116:13.  In fact, Ms. Martin does not even know if she met the minimum qualifications for any of the positions for which she applied.  Further, Ms. Martin admitted that she has no basis to believe that AtlantiCare did not hire the most qualified candidates irrespective of their race.  Id. at 107:1-10; 108:15-20; 1111:5-8; 115:1-2; 116:8-13.

Ms. Martin further predicates her racial discrimination claim upon the alleged denial of a full-time position in January 2005 – more than five years before the Complaint was filed.  Id. at 147:1-148:6.  Of course, this claim is time-barred under the LAD.  Montells v. Haynes, 133 N.J. 282, 286 (1993).  More importantly, Ms. Martin's claim defies common sense because she was awarded a full-time position in May 2005, and ***has been a full-time AtlantiCare employee for the past four years***.  Rosenblatt Decl. ¶ 4, Exh. C, at 148:11; 125:8-15.  Finally, despite repeated claims during discovery that Ms. Martin is pursuing an unequal pay discrimination claim, she testified unequivocally that she is not undercompensated in comparison to similarly-situated Caucasian employees.  Id. at 217:16-20.

14

Ms. Martin's hostile work environment claim is equally baseless.  In her deposition, Ms. Martin claimed that she was the victim of "harassment" based upon three separate incidents that she did not personally experience or witness: (1) she supposedly heard from Ms. Mayfield that Ms. Mayfield supposedly heard from yet another employee, Rebecca Dolequist, that Carolyn Baier allegedly referred to African-Americans as "monkeys" on a single occasion at some distant time in the past, (2) she allegedly heard from an AtlantiCare employee, Kim Ford, that Ms. Baier allegedly said on one occasion that she drives out of her way to avoid gas stations owned by individuals with "dots on their foreheads" (referring to Indian-Americans – not African Americans), and (3) an AtlantiCare employee, Diane Chestnut, allegedly told Ms. Martin that she witnessed a training video in which the "n" word was used repeatedly.  Id. at 135:1-10; 139:14-140:24; 219:17-221:9.  Ms. Martin has no recollection of when the alleged incidents took place (she could not even recite the year) or any other relevant details regarding the incidents (e.g., who witnessed the incidents, or to whom the alleged comments were directed).

The alleged incidents cannot form the basis of a hostile work environment claim under the LAD.  First, the alleged "monkey" remark and the alleged training video are not, as a matter of law, sufficiently severe or pervasive to establish a hostile work environment claim.  See, e.g., Sanchez v. Sungard Availability Services LP, 362 Fed. App. 283, 287-87 (3d Cir. 2010) (derogatory comments about plaintiff's nationality and three racially charged emails were not severe or pervasive); Martinez v. Nat'l Broadcasting Corp., 877 F. Supp. 219, 231 (D.N.J. 1994) (no hostile work environment where plaintiff's superior allegedly uttered derogatory racial and ethnic remarks about plaintiff, which plaintiff never personally heard, on multiple occasions).  Second, the allegedly offensive video appears to have been a training tool, designed to demonstrate to employees the proper way to handle derogatory and offensive comments.  In

other words, no employee intentionally used the "n" word in a derogatory or offensive manner. Third, the alleged incidents did not alter the terms and conditions of Ms. Martin's employment, as she continued to come to work on a regular basis (in fact, she has not even applied for employment outside of AtlantiCare). Rosenblatt Decl. ¶ 4, Exh. C, at 144:12-23; 214:22-24215:8-11; Heitzman v. Monmouth Co., 321 N.J. Super. 133, 147 (N.J. App. Div. 1999) (no liability for harassing comments where alleged offensive epithets did not alter terms and conditions of plaintiff's employment). Finally, Ms. Martin never complained to AtlantiCare Human Resources or management about the alleged incidents prior to initiating this lawsuit (Rosenblatt Decl. ¶ 4, Exh. C, at 138:13-139:9; 221:10-21), further negating any liability for a hostile work environment. Newsome, 103 F. Supp. at 820.

**b.    *Plaintiff Martin Has No Support For Her Wage And Hour Claims.***

Ms. Martin seeks to bring a collective action under the FLSA based on her off-the-clock claim. Any putative collective action claim is completely baseless because Ms. Martin testified that she is and has been aware of AtlantiCare's policies that (1) all employees' hours of work are to be recorded, (2) employees are not permitted to perform any off-the-clock work, (3) employees are responsible for reporting all time worked, and (4) all overtime hours for non-exempt employees must be approved by a department director or other supervisor. Rosenblatt Decl. ¶ 4, Exh. C, at 166:5-167:15. Consistent with AtlantiCare's policies, Ms. Martin further testified that (1) she never told any AtlantiCare supervisor or manager that she was working off-the-clock, (2) no AtlantiCare supervisors were aware that she was allegedly working off-the-clock, and (3) she was never directed by any supervisor or manager to perform off-the-clock work. Id. at 168:8-11; 170:8-19; 172:9-11; 189:14-17; 190:3-5. Ms. Martin also is aware of

only four other similarly-situated employees who allegedly performed off-the-clock work.  Id. at 187:21-25.

Thus, by her own admission, Ms. Martin cannot possibly meet her burden of establishing that AtlantiCare had any policy or practice of allowing employees to work off-the-clock.  In fact, Ms. Martin readily admitted that AtlantiCare's policy *prohibited off-the-clock work*. Accordingly, Ms. Martin's putative collective action claim is frivolous.  See, e.g., Guenzel v. Mt. Olive Bd. of Educ., No. 10-4452, 2011 WL 5599717, at *3 (D.N.J. Nov. 16, 2011) ("Where an employer has no knowledge that an employee is engaging in overtime work and that employee fails to notify the employer . . . , the employer's failure to pay for the overtime hours is not a violation of the FLSA.") (internal citation omitted); Kellar v. Summit Seating Inc., 664 F.3d 169, 177-78 (7th Cir. 2011) (summary judgment properly granted where employer neither knew nor should have known about off-the-clock work).

## III.    CONCLUSION

For the foregoing reasons, Defendants respectfully requests that the Court grant their

motion for sanctions pursuant to Rule 11 and granting the following relief:

- o    Attorneys' fees and costs incurred by Defendants since the institution of this lawsuit; and

- o    Such additional sanctions or relief as the Court may deem necessary to deter repetition of the conduct complained of herein.


Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP
Attorneys for Defendants
AtlantiCare Regional Medical Center, Carolyn
Baier and Rose Uhland

Dated:  August 16, 2012

*s/ Richard G. Rosenblatt*_____
Richard G. Rosenblatt
Nitin Sharma
502 Carnegie Center
Princeton, NJ 08540-6241